# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | )   Bankruptcy No. 04 B 46862 |
| | )   Chapter 7 |
| JAMES J. KELLY, III, | )   Judge John H. Squires |
| | ) |
| Debtor. | ) |

## MEMORANDUM OPINION

These matters come before the Court on the motion of James J. Kelly, III (the "Debtor")

pursuant to 11 U.S.C. § 522(f) to avoid the judgment lien of Insty Prints of Joliet/David

Kaminskas (the "Creditor") and on the Creditor's motion to dismiss the Debtor's motion. For the

reasons set forth herein, the Court denies the Creditor's motion to dismiss and denies the Debtor's

motion to avoid the Creditor's lien.

## I. JURISDICTION AND PROCEDURE

Initially, the Court must address the Creditor's challenge to this Court's subject matter

jurisdiction. The Debtor's motion invokes the lien avoidance powers of 11 U.S.C. § 522(f). 28

U.S.C.§ 1334(a) vests original and exclusive jurisdiction of this bankruptcy case with the United

States District Court for the Northern District of Illinois. By its Internal Operating Procedure

15(a) and 28 U.S.C. §157(a), the District Court has referred this (and all other bankruptcy cases)

case to the bankruptcy judges of this District, who collectively constitute a unit of the District

Court under 28 U.S.C.§ 151. The Debtor's interest in property at the time of the petition became

property of the bankruptcy estate under 11 U.S.C. §541(a)(1) and, under 28 U.S.C. § 1334(e), the

District Court has exclusive jurisdiction of all the property, wherever located, of the Debtor as of

·2·

the commencement of the case and of the property of the estate. The District Court and, thus, this Court by the reference have original, but not exclusive, jurisdiction of all civil proceedings arising under title 11.

The Debtor's motion to avoid part of the Creditor's judgment lien is premised on § 522(f) of the Bankruptcy Code. The motion seeks a determination of the validity and extent of the Creditor's judgment lien against property of the estate. Further, the motion seeks to adjust the debtor-creditor relationship as between the parties in terms of the contested partial lien avoidance sought to protect the homestead exemption claim. Thus, the motion to avoid the lien and the motion to dismiss that motion are core proceedings under 28 U.S.C. §157(b)(2)(A), (K), and (O). Therefore, the Court may enter appropriate orders and judgments under 28 U.S.C. §157(b)(1). The focus of this matter is the Debtor's claimed homestead exemption in certain real property and whether the Creditor's lien asserted against that property impairs the Debtor's exemption. The Court is not asked to deal with the property itself over which it no longer has jurisdiction. *See In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). Rather, the Court's jurisdiction is being invoked to partially avoid the Creditor's judgment lien in order to protect the Debtor's claimed homestead exemption. Accordingly, the Court concludes that it has subject matter jurisdiction. The Court rejects the Creditor's challenge thereto and denies the motion to dismiss.


## II. FACTS AND BACKGROUND

On February 7, 2003, the Creditor obtained a judgment in the Circuit Court of Will County, Illinois, against the Debtor in the amount of $115,885.23. The Creditor recorded a memorandum of that judgment with the DuPage County Recorder of Deeds on March 5, 2003.

-3-

That recording of the Creditor's judgment lien encumbered all real property interests of the Debtor in DuPage County. *See* 735 ILL. COMP. STAT. 5/12-101 (2004).

Subsequently, on December 21, 2004, the Debtor filed a voluntary Chapter 7 bankruptcy petition. His spouse, Lorinda Kelly ("Lorinda"), did not file a petition and is not a debtor seeking relief under the Bankruptcy Code. The Debtor filed his original Schedules and Statement of Financial Affairs on January 14, 2005. Schedule A disclosed his interest in a residence commonly described as 3829 Vardon Court, Woodridge, Illinois (the "Property"). The Property was referenced as being held in joint tenancy with Lorinda and subject to undisputed mortgage liens in favor of Washington Mutual Bank ("Washington") in the amended sum of $163,551.00 and Archer Bank ("Archer") in the amended amount of $210,907.00. The Debtor valued the Property at $400,000.00 subject to secured claims of $462,400.00 (amended to $362,400.00 and later amended to $489,458.00). The Creditor's claim was initially listed on Schedule F as unsecured and undisputed in the sum of $113,817.00 and arising from a judgment (later amended to secured claim status in the amount of $115,085.23). Lorinda was listed as a co-debtor on the debts to Washington and Archer on Schedule H. The Debtor claimed a homestead exemption in the Property on Schedule C pursuant to 735 ILL. COMP. STAT. 5/12-901 (2004). No objections to his exemption claim were made within the applicable time period prescribed by Federal Rule of Bankruptcy Procedure 4003(b)(1).

On February 7, 2005, Washington filed a motion to modify the stay thereby seeking to foreclose its mortgage lien against the Property. That motion was granted on March 11, 2005. A mortgage foreclosure action was filed by Washington in the state court against, *inter alia*, the Debtor, Lorinda, Archer, and the Creditor. The Court has not been furnished a complete copy of

-4-

the record of the foreclosure proceeding. Rather, the Court has received only a copy of the judgment of foreclosure and sale and other orders entered in that matter.

On April 1, 2005, the Creditor filed a motion for an extension of time to file an objection to the Debtor's discharge and a motion to modify the stay as to the Property in order to protect and assert its judgment lien in the foreclosure action. Those motions were granted on April 8, 2005. The Chapter 7 trustee also filed a motion for an extension of time to object to the Debtor's discharge that was granted on April 15, 2005. Pursuant to these motions as well as another motion, the Court extended the deadline for filing objections to the Debtor's discharge to August 9, 2005.

Based on the records that were furnished from the state court foreclosure proceeding, the Court is able to determine the following. On August 15, 2005, the state court entered an order of default against the Debtor, Lorinda, and Archer, among others. Only the Creditor took appropriate action to protect its judgment lien. The state court entered a judgment of foreclosure and sale on August 15, 2005, and found that Washington had a first priority lien in the total sum of $176,324.22. That judgment further found that the Creditor had a valid but subordinate lien by virtue of its recorded memorandum of judgment, and that the balance of its lien totaled $133,354.73 "plus such amounts as shall accrue and be assessed thereafter plus attorney fees and costs." The judgment of foreclosure also stated that the rights and interests of all defendants were inferior to Washington's mortgage lien against the Property, and it provided for a subsequent foreclosure sale of the Property in the event Washington's loan was not timely reinstated or the Property redeemed in accordance with Illinois law.

·5·

Apparently, Archer was the successful bidder at the foreclosure sale. The sale generated the sum of $447,000.00, which was sufficient to pay the amount due Washington in full. The sale left a surplus of $257,103.59. It appears that at this point the Debtor began to participate in the remaining matters before the state court. The Debtor furnished a recent transcript of the state court proceedings in which that court deferred ruling on the division and award of the surplus proceeds pending resolution of the instant matters before the Court.

On August 9, 2005, the Creditor filed an adversary proceeding (05 A 01723) wherein it objected to the Debtor's discharge. That matter was set for trial, but it did not go forward because of a possible settlement. The settlement, however, did not materialize. On April 27, 2006, the Creditor moved to dismiss the adversary proceeding. The trustee objected, and the Court denied the motion. As a result of that development, the trustee moved to be substituted as the party plaintiff in lieu of the Creditor. The Court granted that request and reset the trial for October 20, 2006, with the trustee as the substituted plaintiff.

The Debtor alleges in his motion to avoid the Creditor's lien that the judgment lien only encumbers the Debtor's undivided one-half interest in the Property, not Lorinda's interest, but that both of their undivided interests were encumbered with mortgage liens in favor of Washington and Archer. In addition, the Debtor contends that on March 14, 2006, Archer requested leave to appear, answer, and prove up its claimed lien against the Property. The state court denied that request without prejudice "as to its right to any surplus that may exist after payment to creditors who have exercised their rights have been duly paid from the proceeds of . . . sale." The Debtor further alleges that Archer filed an amended motion seeking a lien and judgment in the amount of $218,488.06 to be deemed a surviving lien to attach to any available surplus proceeds from the

-6-

foreclosure sale. The Debtor contends that if Archer is successful in its position, then the combined liens of Washington, Archer, and the Creditor under the § 522(f) formula would total the sum of $362,886.09 as to the whole of the Property, which was valued in the Debtor's Schedules at $400,000.00. His undivided one-half interest at the time of the petition was estimated at $200,000.00. The Debtor thus computes that in order to protect his claimed homestead exemption of $7,500.00, the Creditor's judgment lien must be partially avoided pursuant to § 522(f) as follows: the Creditor's lien of $115,885.23 plus one-half of the total of Washington's and Archer's liens aggregating the sum of $181,443.05, plus the Debtor's claimed homestead of $7,500.00 equals $304,828.28, which is greater than the Debtor's scheduled one-half interest in the Property he estimated at $200,000.00 by the sum of $104,828.28. Therefore, the Debtor concludes that $104,828.28 should be avoided from the Creditor's judgment lien of $115,885.23, leaving it with the enforceable lien amount of $11,056.95 in order for him to be able to collect his homestead exemption from the foreclosure sale surplus proceeds.

Not surprisingly, the Creditor objects to the Debtor's motion on several grounds and moves to dismiss his motion. First, the Creditor contends that its judgment lien entered and perfected in 2003 has been merged into the judgment of foreclosure and sale and is excepted from the relief sought under 11 U.S.C. § 522(f)(2)(C) because such lien avoidance provisions "shall not apply with respect to a judgment arising out of a mortgage foreclosure." Next, the Creditor contends that after the foreclosure sale, the Debtor no longer had an interest in the Property. Furthermore, the Creditor argues that the Court is obliged to give full faith and credit to the orders and judgments of the state court. The Creditor asserts that the Debtor's motion is an improper collateral attack on the state court judgment. Moreover, the Creditor maintains that the Debtor

-7-

has waited too long to assert his lien avoidance motion to the detriment and prejudice of the Creditor and should be estopped at this point. According to the Creditor, the Debtor's motion is subject to the defense of laches.

## III. DISCUSSION

This matter likely would have been an uncontested, routine lien avoidance motion that the Court frequently encounters, except for the unusual facts that have developed post-petition. Those facts include the relatively rare scenario of a foreclosure sale producing a surplus fund after satisfaction of the senior mortgage lien. All of this followed an adjudication where not all lien holders actively participated pre-judgment to protect their liens (Archer) and the mortgagor debtors (the Debtor and Lorinda) were defaulted and did not timely assert their homestead exemption claims. The Debtor filed a bankruptcy case wherein he timely claimed his homestead exemption and then much later asserted lien avoidance powers against the junior judgment lien holder. More often, the common scenario involves a foreclosure sale that is insufficient to satisfy the senior and junior lien holders, thereby leaving a deficiency rather than a surplus to fight over.

The dispute here is whether the Debtor can partially avoid the Creditor's lien in order to assert his $7,500.00 homestead exemption claim from the surplus sale proceeds in the custody of the state court.

A.   **The Merits and Sufficiency of the Debtor's Motion to Avoid the Creditor's Lien**

It is undisputed that the Debtor claimed his Illinois statutory homestead exemption in the Property on his original and amended Schedule C as required by Federal Rule of Bankruptcy Procedure 4003(a). No party in interest objected thereto within the time required by Federal Rule

-8-

of Bankruptcy Procedure 4003(b). Thus, the homestead exemption claimed is exempt under 11 U.S.C. § 522(l). *See also Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992).

No time limit is prescribed in the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure for a debtor to bring a motion under § 522(f)(1) to avoid a judicial lien that impairs an exemption. *In re Dodge*, 138 B.R. 602, 607 (Bankr. E.D. Cal. 1992). Lien avoidance pursuant to § 522(f)(1) is available only when the judicial lien impairs an exemption pursuant to the mathematical formula set forth in § 522(f)(2)(A). *See In re Thomsen*, 181 B.R. 1013, 1016 (Bankr. M.D. Ga. 1995). Avoidance in whole or in part can occur when the amount due on account of the liens sought to be avoided, all other liens on the property, and the amount of the debtor's exemption "exceeds the value that the debtor's interest in the property would have in the absence of any liens" and thereby "impairs" the debtor's claimed exemption. 11 U.S.C. § 522(f)(2)(A)(i)-(iii). Accordingly, in order for a court to determine if a judgment lien impairs an exemption, the following calculation must be utilized: add (i) the lien the debtor seeks to avoid, (ii) all other liens, and (iii) the exemption amount in the absence of other liens, and subtract the value of the debtor's interest in the property in the absence of all liens. 11 U.S.C. § 522(f)(2)(A)(i)-(iii); *see also In re Vokac*, 273 B.R. 553, 556 (Bankr. N.D. Ill. 2002); *Thomsen*, 181 B.R. at 1016. When the property is jointly owned and when certain liabilities are joint but the debtor is solely liable for the subject lien, the court should adjust the general formula to account for the different liabilities. *See In re Nelson*, 229 B.R. 263, 265 (Bankr. D. Maine 1998), *aff'd*, 192 F.3d 32 (1st Cir. 1999).

·9·

The motion sets forth the required information under § 522(f)(2)(A). Thus, the Debtor has met his burden of establishing the prima facie elements for avoidance of a judicial lien. The inquiry now turns to the Creditor's objections and defenses thereto.

**B.    Whether the Merger Doctrine and 11 U.S.C. § 522(f)(2)(C) Bars the Debtor's Relief**

First, the Court must consider in tandem the Creditor's arguments that under Illinois law the judgment lien was merged into the subsequent judgment of foreclosure and sale and, thus, relief under § 522(f)(1)-(2)(A) is excepted by § 522(f)(2)(C). The controlling law here is § 522(f) of the Bankruptcy Code which governs the motion, not the inapposite Illinois law regarding judgments and merger of liens. Congress specifically legislated § 522(f) which affords the unique ability to debtors in bankruptcy cases to avail themselves of the lien avoidance powers. That the Creditor's perfected lien is a "judicial lien" as defined in 11 U.S.C. § 101(36), as opposed to a "lien" as defined in 11 U.S.C. § 101(37), is not disputed because § 101(36) covers only those liens defined in § 101(37) that were obtained by judgment or other legal or equitable process or proceeding. Thus, the Creditor's judgment against the Debtor, which was recorded against the Property thereby perfecting the lien, was the origin of the Creditor's lien, not the subsequent foreclosure judgment obtained by Washington against the Property in which the Creditor's junior judgment lien was found to be valid but subordinate to Washington's lien.

Accordingly, the Court concludes that the exception of § 522(f)(2)(C) is inapplicable because the Creditor's lien did not arise "out of a mortgage foreclosure" judgment, but was merely adjudicated to be a junior and valid lien. 11 U.S.C. § 522(f)(2)(C). If there is a conflict between Illinois law and the Bankruptcy Code, which the Court doubts, then under the Supremacy

-10-

Clause of the U. S. Constitution, the Code trumps Illinois law. Thus, the Court overrules those objections and defenses of the Creditor.

**C.    Whether the Order Lifting the Automatic Stay Defeats the Debtor's Motion**

The inquiry now turns to the Creditor's contention that the Debtor's rights regarding the Property have been terminated at this point as a result of the stay lift granted as to the Property and the subsequent foreclosure action in the state court that was prosecuted to sale and confirmation of sale by Washington. This argument misses the point. The Court is not adjudicating the Property itself or the surplus proceeds from its sale that are in the custody of the state court. Rather, at issue here is whether the Court should properly grant the Debtor's motion based on § 522(f) in order to protect the homestead exemption he claimed under § 522(b)(2) and 735 ILL. COMP. STAT. 5/12-901, and thereby partially avoid the Creditor's undisputed judgment lien to enable the Debtor to recover the exemption amount from the surplus proceeds. That the Debtor did not timely appear in or contest the state foreclosure action and assert his homestead exemption in that forum is not outcome determinative here. That is a matter for the state court to determine. Nothing in the state court record speaks to the Debtor's homestead exemption, and none of the state court orders or judgments supplied mentions same.

Indeed, it is only after a sale that a homestead exemption can be paid out of excess proceeds after payment of unavoidable prior liens. Thus, the Court concludes that the only actions with respect to the homestead exemption claimed by the Debtor have occurred in this forum. The Debtor's motion does not involve the Property itself, which has effectively left the jurisdiction of this Court via the stay lift orders as well as the state court which held and confirmed the foreclosure sale of the Property and is currently in custody of the surplus proceeds to distribute.

-11-

Hence, the Court concludes that nothing in the record of this matter or the record furnished from the state court foreclosure action eliminated or negated the Debtor's homestead exemption claim against the surplus proceeds. The Court therefore overrules the Creditor's objection on that point.

**D.      Whether the Debtor's Motion Is Precluded by Full Faith and Credit**

The next point to address is the Creditor's contention that the relief sought by the Debtor would not afford full faith and credit to the state court orders and judgments. The provisions of 28 U.S.C. §1738 codify the requirement that federal courts, like this bankruptcy court, give full faith and credit to the records and judicial proceedings of any State of the United States. The relevant state court orders, judgments, and other papers furnished do not directly or indirectly mention, much less rule on, the Debtor's homestead exemption. The only references to the Creditors's judgment lien are with respect to its creation, perfection, and junior priority position subordinate to Washington's lien. There is nothing in the record of those state court proceedings that prohibits, restricts, or negates the Debtor's homestead exemption claim that was asserted without objection in this case over one year ago. The Court therefore rejects this argument. The cases cited by the Creditor are not on point and do not involve § 522(f), which has no Illinois analogue in case law or statute.

**E.      Whether the *Rooker-Feldman* Doctrine Precludes the Relief Sought by the Debtor**

Much more complicated is the related issue of whether the *Rooker-Feldman* doctrine serves as a bar to the relief sought by the Debtor. The doctrine emerged from two United States Supreme Court cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983). The doctrine prohibits inferior federal courts from reviewing state court decisions via direct or indirect collateral attacks. *Rooker*, 263 U.S. at 416; *Feldman*, 460

-12-

U.S. at 476. Specifically, it is a jurisdictional doctrine premised on the basis that, because federal district courts, and units thereof like this bankruptcy court, are courts of original jurisdiction, such lower federal courts are not authorized to review appeals from state court judgments, except where Congress has authorized such collateral review (such as habeas corpus petitions). *See Crestview Vill. Apts. v. United States Dept. of Hous. & Urban Dev.*, 383 F3d 552, 555-56 (7th Cir. 2004). The Supreme Court recently clarified the doctrine and stated that it bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The *Rooker-Feldman* doctrine only applies if the party had a reasonable opportunity to raise the claims in the state court proceeding. *Taylor v. Fed. Nat'l Mortgage Ass'n.*, 374 F.3d 529, 534 (7th Cir. 2004). The doctrine applies to direct attacks on state court judgments as well as "claims that are inextricably intertwined with state court determinations." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 2000). Whether a claim is "inextricably intertwined" with a state court judgment depends on "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2000). The relevant inquiry in each matter is whether the lower federal court "is in essence being called upon to review the state-court decision." *Zurich Am. Ins. Co. v. Superior Ct.*, 326 F.3d 816, 823 (7th Cir. 2003). If "success in the federal court would require overturning the state court decision," the federal court lacks jurisdiction over the matter. *Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003).

·13·

The Supreme Court makes it clear that the doctrine only applies to cases filed "by state-court losers" attempting to have a federal court reexamine a state court decision. *Exxon*, 544 U.S. at 284. Although the Debtor was defaulted for his failure to appear in the foreclosure action, there is no showing that the state court made any ruling that precludes or restricts the Debtor's homestead exemption claim made in this Court. The exemption issue and the § 522(f) relief sought here were never raised or adjudicated in that forum. Indeed, the relief sought under § 522(f) has no Illinois analogue and, thus, could not have been raised in and decided by the state court. Thus, the § 522(f) relief is not so inextricably intertwined with the issues decided by the state court as to preclude this Court from deciding that issue. If the state court concludes that the Debtor has forfeited his homestead exemption claim as a result of his failure to previously assert the exemption in that proceeding, that is the decision of that court because it holds the surplus funds to be disbursed to the winner(s). Because all of the state court orders and judgments are silent on the issue of the homestead exemption, the Court concludes that that issue and the unique relief available under § 522(f) can be adjudicated here and are not barred by the *Rooker-Feldman* doctrine. Consequently, the Creditor's objection on this point is overruled.

**F.      Whether the Debtor's Motion is Barred by Equitable or Judicial Estoppel**

The next objection raised by the Creditor is estoppel. It is unclear what form of estoppel the Creditor asserts. The thrust of the Creditor's argument is that the Debtor failed to assert his rights in the Property while the Creditor incurred attorney's fees and costs to obtain its judgment; perfected its judgment lien against the Property; protected the lien in its subordinate position in the foreclosure action; and participated in the sale process with one or more bids. According to the Creditor, the Debtor took a "wait and see" approach in anticipation that the Creditor's lien

would be extinguished by the state court. The Creditor contends that it relied on the Debtor's inaction in those proceedings. The Court will examine the elements of equitable estoppel and then consider the requirements for the application of judicial estoppel in order to determine whether either doctrine applies.

### 1.    Equitable Estoppel

Estoppel arises when one has made a misleading representation to another and the one misled has reasonably relied to his detriment on that representation. *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir. 1990); *Citation Cycle Co., Inc. v. Yorke*, 693 F.2d 691, 695 (7th Cir. 1982) ("Estoppel 'arises . . . when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice.'"). "The reasons for the general application of estoppel are simple enough–the doctrine prevents a party from benefitting from its own misrepresentations." *Black*, 900 F.2d at 115. The Seventh Circuit has indicated that application of the doctrine of equitable estoppel is particularly appropriate in bankruptcy proceedings. *Citation Cycle*, 693 F.2d at 694.

There are four requirements to establish a claim of estoppel: (1) the party to be estopped must know the facts and must intend, or lead the other party to believe he intended, that his conduct will be acted upon; (2) the party seeking estoppel must be ignorant of the true facts; (3) the party asserting the estoppel must have actually and reasonably relied on the words or conduct; and (4) the reliance must have caused the party asserting the estoppel injury. *McConahey v. United States (In re McConahey)*, 192 B.R. 187, 192 (Bankr. S.D. Ill. 1996). Estoppel focuses on the effects of the obligor's conduct on the obligee–not on the obligor's intent. *Wald v. Chi. Shippers Ass'n*, 529 N.E.2d 1138, 1148 (Ill. App. Ct. 1988) (*citing Saverslak v. Davis-Cleaver*

-15-

*Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979)). However, estoppel does require a knowing

misrepresentation, which, in turn, requires an intent to mislead. *Cent. States, S.E. & S.W. Areas*

*Pension Fund v. Kroger Co.*, 226 F.3d 903, 914 (7th Cir. 2000) (*citing Coker v. Trans World*

*Airlines, Inc.*, 165 F.3d 579, 585-86 (7th Cir. 1999)). In order to prevail on a theory of estoppel,

a party must establish by "clear and unequivocal" proof that it relied on representations or acts

of the other party and had "no knowledge or convenient means of knowing the true facts." *Wald*,

529 N.E.2d at 1148.

Based on the record, the Court finds that the Creditor failed to demonstrate proof of each

element required for application of equitable estoppel. There is no indication that the Debtor

intentionally misled the Creditor in connection with the foreclosure action, or that the Debtor took

some action that indicated he would not file the lien avoidance motion at bar and somehow lulled

the Creditor into a false sense of security that he would not do so. Thus, the first element is not

present. Further, it is unclear whether any words or conduct of the Debtor led the Creditor to take

some action it would not have otherwise taken but for those words or actions. Accordingly, the

second element is not present. The third element of actual and reasonable reliance by the Creditor

is also lacking, as is the showing of actual injury resulting from the reasonable reliance.

In sum, the Creditor has failed to show by "clear and unequivocal" proof that the Debtor

made a knowing misrepresentation on which the Creditor reasonably relied or that the Creditor

had no knowledge or convenient way to discover the true facts. Therefore, the Court finds

without merit the Creditor's argument that the Debtor should be estopped from seeking to avoid

the Creditor's lien.

-16-

## 2.     Judicial Estoppel

Judicial estoppel arises where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter . . . assume a contrary position...." *N.H. v. Me.*, 532 U.S. 742, 749 (2001). Judicial estoppel is an equitable concept invoked at a court's discretion and designed "to prevent the perversion of the judicial process." *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). Judicial estoppel may apply when the following elements are met: (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 914-15 (7th Cir. 2005); *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003). "'Judicial estoppel is strong medicine, however, and it should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake. The rule looks toward cold manipulation and not an unthinking or confused blunder.'" *In re FV Steel & Wire Co.*, No. 04-22421-svk, 2006 WL 2536445, at *3 (Bankr. E.D. Wis. Sept. 1, 2006) (*quoting Fairchild v. Touchtunes Music Corp.*, No. 01 C 9699, 2002 WL 31833768, at *2 (N.D. Ill. Dec. 12, 2002) (internal quotations and citations omitted)).

The Court finds that the Creditor failed to show that the Debtor took a position in the state court foreclosure action, where he was defaulted for not appearing, different from the position taken in his motion at bar to partially avoid the Creditor's lien via § 522(f). The Debtor's default in the state court matter is not inconsistent with the position he has advocated here. There, he did

-17-

nothing. In contrast, the Debtor has actively, but belatedly, pursued the motion to avoid the Creditor's lien. The Debtor has not advocated changed positions in two pieces of litigation. Moreover, the Debtor did not prevail in the state court foreclosure proceeding–he was defaulted. The Seventh Circuit has explicitly rejected a broadening of judicial estoppel to situations where the party did not prevail in the first matter. *United States v. Newell*, 239 F.3d 917, 921 (7th Cir. 2001). Thus, the Court finds that judicial estoppel does not apply.

**G.    Whether Res Judicata Bars the Relief Sought by the Debtor**

Next, the Creditor argues that the doctrine of res judicata bars the Debtor from seeking to avoid its lien. Because an Illinois state court rendered the judgments and orders at issue, the Court must look to Illinois law to determine whether res judicata bars the Debtor's relief. *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999).

Under the doctrine of res judicata or claim preclusion, a final judgment on the merits issued by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). Res judicata bars the later suit between parties involving the same cause of action and includes "what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id.* In order for the doctrine of res judicata to apply, three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of the causes of action; and (3) there is an identity of parties or their privies. *4901 Corp.*, 220 F.3d at 529 (*quoting River Park*, 703 N.E.2d at 889); *see also Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001).

-18-

The Court finds that the Creditor failed to establish an identity of causes of action in the state court matter and this matter. Specifically, the issues in the foreclosure action did not include the § 522(f) issue raised here. Consequently, the doctrine of res judicata does not bar the relief sought by the Debtor.

## H.    Whether the Doctrine of Collateral Estoppel Bars the Debtor's Motion

Next, the Creditor argues that the Debtor cannot litigate matters before this Court that could have been presented to the state court. The doctrine of collateral estoppel precludes the relitigation of issues previously determined in another court. *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979); *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002) (finding that collateral estoppel "prevents a party from relitigating an issue that it has previously litigated and lost"). "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

Federal courts must give full faith and credit to the collateral estoppel effects of state court judgments under state standards. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Am. Nat'l Bank & Trust Co. v. Reg'l Transp. Auth.*, 125 F.3d 420, 430 (7th Cir. 1997). Bankruptcy courts are bound by this obligation. *See Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994). "[T]he preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law." *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (*quoting CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002)). Because this matter presents a question regarding the collateral estoppel effect of Illinois state court orders and judgments, the Court must apply the Illinois law of collateral estoppel. *See In*

-19-

*re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004) ("The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment. . . .").

Under Illinois law, the essential elements for application of collateral estoppel are: (1) the issue decided in the prior adjudication must be identical to the issue in the current action; (2) the party against whom the estoppel is asserted must have been a party or in privity with a party to the prior case; and (3) there must have been a final judgment on the merits in the prior action. *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999) (*citing Herzog v. Lexington Twp.*, 657 N.E.2d 926, 929-30 (Ill. 1995)); *see also Nowak*, 757 N.E.2d at 477; *DuPage Forklift Serv. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849 (Ill. 2001). In Illinois, collateral estoppel is "limited to the precise factual or legal issues actually litigated and decided when a prior order was entered." *People v. Williams*, 563 N.E.2d 385, 392 (Ill. 1990). "Actually litigated" does not mean "thoroughly litigated," but it does mean "that the parties disputed the issue and the trier of fact resolved it." *Taylor v. Peoples Gas Light & Coke Co.*, 656 N.E.2d 134, 141 (Ill. App. Ct. 1995).

The Court finds that the Creditor has not met the "burden of showing with certainty that the identical and precise issue" was decided in the earlier matter. *See Anderson v. Fin. Matters, Inc.*, 672 N.E.2d 1261, 1267 (Ill. App. Ct. 1996). It is undisputed that the § 522(f) issue was not raised or litigated in the state court foreclosure action. Hence, the doctrine of collateral estoppel does not bar the Debtor from seeking to avoid the Creditor's lien in this bankruptcy case.

## I.    Whether the Doctrine of Laches Bars the Debtor's Motion

The final and strongest argument raised by the Creditor is the defense of laches. The Creditor argues that the Debtor took a "wait and see" approach in the hopes that the Creditor's

·20·

entire lien would be extinguished in the foreclosure action. When that lien was not extinguished

as hoped, according to the Creditor, the Debtor then sought to avoid the lien in the bankruptcy

case under § 522(f). The Creditor asserts that the Debtor's failure to take any action with respect

to its lien until the filing of the instant motion in May of 2006, constitutes an unreasonable lack

of diligence and results in prejudice to the Creditor.

In support of the laches argument, the Creditor supplied the affidavit of David Kaminskas

("Kaminskas"). Kaminskas states that pursuant to his position in the foreclosure action (wherein

the Creditor was found to have a valid and good lien, subordinate only to that of Washington),

he agreed to dismiss the adversary proceeding in this Court (which was denied by the Court when

the Trustee objected and moved to prosecute it). (Kaminskas Aff. ¶ 2.) He further avers that he

appeared at the foreclosure sale and engaged in bidding for the Property (to protect the Creditor's

junior judgment lien), which reached the point where sufficient funds were bid to pay the monies

owed the Creditor in the sum of $141,356.05. (*Id.* ¶¶ 3-4.) Kaminskas states that any subsequent

modification to or avoidance of the lien would constitute an undue hardship to his detriment

because he relied on the Debtor's position in the foreclosure matter. (*Id.* ¶ 5.)

Laches is an equitable defense that is properly invoked when "unreasonable delay in

pressing one's rights . . . prejudices the defendant." *Cook v. City of Chi.*, 192 F.3d 693, 695 (7[th]

Cir. 1999). In order for laches to apply in a case, the party asserting the defense must establish

two elements: (1) an unreasonable lack of diligence by the party against whom the defense is

asserted; and (2) prejudice arising from the delay. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733

(7th Cir. 2003); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 620 (7th Cir. 2002); *Hot

Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). A defendant is prejudiced from

-21-

delay in asserting a claim where the defendant has changed its position in a way that would not

have occurred if the plaintiff had not delayed. *Hot Wax*, 191 F.3d at 824. The Seventh Circuit

has noted that "'laches is a question of degree'" and that "'if only a short period of time has

elapsed since the accrual of the claim, the magnitude of prejudice required before the suit should

be barred is great.'" *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 795 (7th Cir. 2002)

(*quoting Hot Wax*, 191 F.3d at 824).

The Court finds that this defense has merit. The Creditor has met its burden of

demonstrating unreasonable lack of diligence by the Debtor and prejudice to the Creditor arising

from the delay. The Debtor could have brought this motion much earlier in the case, even prior

to the state court foreclosure action being filed. The bankruptcy case was filed on December 21,

2004, and the Debtor waited until May of 2006 to file the lien avoidance motion. Instead of

acting earlier, the Debtor waited until after the Creditor properly protected its unreduced lien and

timely ensured that it was afforded the second lien position in the foreclosure judgment. The

Creditor protected its junior lien by bidding at the foreclosure sale and thereby forcing Archer to

out-bid it to protect Archer's defaulted junior mortgage position. All of these steps, as well as the

attorney's fees incurred, were taken to protect the full amount of the Creditor's judgment lien.

It was not until after the sale had closed and the surplus created that the Debtor filed the instant

motion seeking to substantially reduce and avoid the Creditor's lien.

The Court finds that the Debtor sat on his hands and failed to take any timely action in the

foreclosure action. His inaction there and his delayed action here caused prejudice to the Creditor.

Because the Debtor slept on his rights, he loses them. *See Hot Wax*, 191 F.3d at 820. Indeed, the

Creditor, a junior lien holder, would not have participated in the foreclosure proceedings to the

-22-

extent that it did had the Debtor filed the lien avoidance motion earlier and the Creditor's lien had

been avoided. Instead, the Debtor waited until the Creditor spent time and money to protect the

full amount of its lien position in the state court and then filed the motion to avoid the lien. It is

noteworthy that the Debtor's motion could have been brought at any time post-petition, but was

not filed until after the sale and the determination that there was a surplus. Typically, § 522(f)

motions are filed relatively early in bankruptcy cases rather than later. Had the Debtor filed the

motion early on in the bankruptcy case, the Creditor likely would not have taken the actions it did

to protect a lien of approximately $11,000.00.

The Debtor might be able to convince the state court to pay him the $7,500.00 homestead

exemption from the sale surplus despite his default and, if so, that is the most he stands to gain

there. Archer, on the other hand, is claiming an unpaid debt that was secured with a mortgage of

over $200,000.00. If allowed to share in the surplus sale proceeds, Archer will benefit greatly if

the Creditor's lien is reduced by over $104,000.00. It is this very substantial prejudice that the

Creditor will suffer if the Debtor's motion is granted.

Archer was the successful bidder at the foreclosure sale, and it had a mortgage lien

recorded after Washington's, but perhaps prior in time to the Creditor's recorded judgment lien.

Like the Creditor, Archer did not timely participate in the foreclosure action prior to the entry of

the judgment of foreclosure and sale. Archer thus failed to get in the priority line, possibly ahead

of the Creditor. Archer and the Debtor, however, stand to gain in the fight over the surplus

proceeds if the Debtor is successful here. The Debtor may be able to convince the state court to

pay him the homestead exemption he neglected to timely assert there. Archer, on the other hand,

may be allowed to claim some of the surplus if it can assert belatedly its mortgage lien, especially

·23·

if the Creditor's lien is substantially avoided here in the amount of $104,828.28 and reduced to only $11,056.95.

Moreover, it is possible that there is a side agreement between the Debtor and Archer. The order approving the report of sale to Archer directed the sheriff to evict and dispossess the Debtor and Lorinda from the Property effective thirty days thereafter, which was continued by subsequent orders indicating same to be conditioned on Lorinda making "usual monthly payment[s]" "which is [sic] deemed use and occupancy, and not as rent. . . ." Thus, the spectre of a side deal or understanding between Archer (as successful purchaser) and at least one of the Kellys arises. Both would likely be advantaged economically by the granting of the Debtor's motion to the obvious detriment of the Creditor.

The Court concludes that the Creditor has shown both unreasonable delay and prejudice resulting from the Debtor's failure to act in the state court and his delay in bringing the motion to avoid the Creditor's lien. As a result, laches equitably bars the relief sought. Hence, the Court denies the Debtor's motion and sustains the Creditor's objection on this point.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the Debtor's motion to avoid the Creditor's lien and denies the Creditor's motion to dismiss the Debtor's motion.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _9/20/06_

_____
John H. Squires
United States Bankruptcy Judge

cc:    See attached Service List

## SERVICE LIST

### James J. Kelly, III
### Bankruptcy No. 04 B 46826

Nathan Q. Rugg, Esq.
Howard L. Adelman, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd., Suite 1050
Chicago, IL 60604

John C. Renzi, Esq.
June, Prodehl & Renzi, LLC
1861 Black Road
Joliet, IL 60435

The Honorable Bonnie M. Wheaton
18th Judicial Circuit Court
505 N. County Farm Road
Wheaton, IL 60187

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

AO 72A
(Rev. 8/82)